## SWEDISH–AMERICAN NATIONAL BANK OF MINNEAPOLIS v. JOSEPH M. DAVIS, Assignee.[1]

April 24, 1896.

Nos. 9958—(182).

### Insolvency—Secured Creditor—Allowance of Claim.

Under our insolvency law, the creditor, before he has exhausted his security, or surrendered it to the assignee, is entitled to file his secured claim, and have the amount and validity of the same determined by the assignee or the court on appeal, but he is not entitled to share in the distribution of the insolvent estate until he has so exhausted or surrendered his security.

### Same—Sale of Collateral Security.

The creditor held, as collateral security, negotiable notes made by one third party, and indorsed by another; obtained judgment thereon against the maker, at his place of residence, in another state; issued execution, which was returned, "No property found"; then sold the judgment at public auction; but never had any power of sale from the insolvent pledgor. *Held*, the sale was unauthorized, and not a proper way to realize on the security. *Held*, further, if it appeared that the collateral security was wholly uncollectible, and yet of some considerable prospective value, the court, in the insolvency proceeding, might, as conditions on which it would allow the creditor to share in the distribution on the balance of his claim, allow him, under proper restrictions, to sell the collateral judgment, instead of surrendering the security to the assignee.

### Same.

The court might also, on proper showing, after the sale, ratify it, and allow the creditor so to share in the distribution. But *held*, in this case, no such showing was made, and the order allowing the creditor so to share in the distribution is for that reason reversed.

Appeals by defendant, as assignee of Jacob Skoll, insolvent, from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial, and also from an order permitting plaintiff to participate in the distribution of the insolvent estate. Order denying new trial affirmed. Order permitting plaintiff to participate reversed.

*Merrick & Merrick*, for appellant.

*A. Ueland*, for respondent.

[1] Reported in 66 N. W. 986.

CANTY, J. In December, 1894, the insolvent, Skoll, made an assignment for the benefit of his creditors under the insolvent law of 1881,[2] and acts amendatory thereof. He was then indebted to the respondent bank in the sum of $2,053. The bank held, as collateral security for this indebtedness, two negotiable promissory notes, for the aggregate amount of $2,834, made by one Golden, a resident of Chicago, Illinois, to the Northwestern Iron & Metal Company, and by the latter indorsed in blank to Skoll. The bank brought an action on these notes, at their maturity, against Golden, in the circuit court of Cook county, Illinois, and on July 13, 1895, obtained judgment against him thereon for $2,963.81; and on the 23d day of the same month an execution was issued thereon, out of that court, to the sheriff of that county, who on October 4, thereafter, returned it, "No property found." In the meantime the bank had filed its claim against Skoll with his assignee, who disallowed the same. The bank appealed to the court below, and thereafter, on October 30, 1895, an order was made allowing the claim. It was further ordered that the bank was entitled to share in the distribution of the insolvent estate, on assigning its said judgment against Golden to the assignee before distribution was ordered; "that in case plaintiff shall not assign said judgment to said assignee before the time mentioned, but shall, before said time, dispose of and realize on the same, according to law, plaintiff is entitled to share with the other creditors in the distribution of said insolvent estate, for the full amount of its said claim, less the sum so realized on said judgment." The assignee made a motion for a new trial, which was denied by the court.

On November 7, 1895, the Golden judgment was sold by the bank, at public auction, at the office of one Heap, in a certain building at Chicago, for the sum of $505, to one Wolff. Notice of this sale was given by publishing the same once in a daily newspaper in Chicago on October 28, and on the same day mailing copies of the notice to Golden and his attorney, at Chicago, and to the insolvent, the assignee, and his attorneys, at Minneapolis, Minnesota, where all of the latter resided. Thereafter, on the application of the bank,

[2] Laws 1881, c. 148; see G. S. 1894, §§ 4240–4254.

the court, on December 12, 1895, ordered that after deducting from the bank's claim against Skoll the amount for which said judgment sold, less certain expenses incurred by the bank in procuring the judgment and making the sale, the balance of the claim share with the claims of the other creditors of Skoll in the distribution of the insolvent estate. From this order the assignee appeals, and also appeals from the order denying his said motion for a new trial.

1. It is contended by appellant that the court erred in allowing the claim of the bank against Skoll at all, until the bank had either exhausted its collateral security, or surrendered it to the assignee, and that, therefore, his motion for a new trial should be granted. We cannot agree with appellant. In providing for the filing, allowance, and payment of claims, the statute makes no distinction between secured and unsecured claims, except as found in G. S. 1894, § 4234. This section provides the order in which claims shall be paid, and at the end of the section is added the following: "Provided, that no debts for which the creditor holds a mortgage, pledge or other security, shall be so paid until the creditor shall have first exhausted his security, or shall surrender and release the security to the assignee or assignees." This simply prohibits the payment of the secured claim, not its filing and allowance; and we see no reason why such a claim should not be filed and allowed, but its payment refused or prohibited until the creditor has first exhausted his security or surrendered it to the assignee.

2. Skoll did not give the bank any power of sale authorizing it to sell the collateral, and it is well settled that, without such a power, it could not, without the aid of the court, have sold the collateral notes before they were merged in the judgment. Cleghorn v. Minnesota Title Ins. & T. Co., 57 Minn. 341, 59 N. W. 320. We are also of the opinion that it had no more right thus to sell the judgment than it had to sell the notes. When, however, such a judgment is wholly uncollectible, but has some considerable prospective value, we see no reason why the court, in the exercise of its equitable discretion, cannot aid the creditor to exhaust his security by a sale of the judgment, instead of requiring a surrender of it before participating in the insolvent estate. We are of the opinion that in a proper case, on a proper showing, and un-

der proper restrictions, the court, in the assignment proceeding, may give the creditor leave to sell the collateral judgment, and thereupon to take a dividend on the balance of his claim. This would not be a sale by the court, or a judicial sale at all, but a sale in pais, on which the court would, in advance, impose proper restrictions, and, after the sale, inquire into its fairness, and the sufficiency of the amount bid, as the conditions on which it would allow the creditor to take such dividend. We are also of the opinion that even where the sale of the collateral judgment is made without any previous hearing or leave of the court, but it sufficiently appears that this has not in any manner prejudiced the assignee or the other creditors, and the sale was fair, the price received adequate, and if a sufficient showing is made as to the uncollectibility of the collateral security, the court may ratify the unauthorized sale, and allow the creditor to take a dividend on the balance of his claim.

Applying these principles to the case at bar, it is plain that the bank never brought itself within these requirements. The only thing it has shown as to the uncollectibility of this security is that an execution was returned unsatisfied on the judgment against Golden. This would be sufficient to enable the bank to proceed against Golden by supplemental proceedings or creditors' bill, but would not, in such a case as this, be sufficient to enable it to dispense with such proceedings without showing that they would avail nothing. The bank is asking special, and somewhat extraordinary, relief, and it should make a satisfactory showing. But even if the return of the execution, "No property found," raised the presumption that Golden was insolvent, the court does not find that he was, or that the judgment, or some part of it, could not, by proper means and proper diligence, be collected. That is not all. It appears that the collateral notes were indorsed in blank by the iron and metal company, and were, before their maturity, delivered to the bank, with these indorsements on them. It does not appear whether the bank ever took proper steps to hold this indorser, or that this indorser is insolvent. Then it certainly does not appear that the bank has made proper efforts to exhaust its collateral security in the regular and ordinary way before attempting to exhaust it in this extraordinary way. It must make as strong a showing here as it would have to make if it were pro-

ceeding to attain the same, and by bill in equity to foreclose and sell the collateral security, in order to be allowed to participate in the distribution of the insolvent estate.

For these reasons the order allowing the bank to share with the other creditors in the distribution of the insolvent estate is erroneous. But in our opinion the above-quoted prior order, made on the trial of the appeal, permitting the bank to share in the distribution in case it shall "dispose of and realize on" its judgment "according to law," did not, as contended by respondent, authorize it to sell the judgment as it has done. The order denying a new trial was therefore not erroneous.

The order denying a new trial is affirmed. The order permitting the respondent to share in the distribution of the insolvent estate is reversed, and the case remanded for further proceedings not inconsistent with this opinion.